# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 27 2017, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery A. Earl
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of E.H. (Child) and R.H. (Father) and K.G. (Mother); | October 27, 2017 |
| | Court of Appeals Case No. 32A05-1706-JT-01161 |
| R.H. (Father), and K.G. (Mother), | Appeal from the Hendricks Superior Court |
| *Appellants-Respondents,* | The Honorable Karen M. Love, Judge |
| v. | Trial Court Cause No. 32D03-1608-JT-4 |
| The Indiana Department of Child Services, | |



*Appellee-Petitioner*

**May, Judge.**

K.G. ("Mother") and R.H. ("Father") (collectively, "Parents") appeal the involuntary termination of their parental rights to E.H. ("Child"). Parents argue the Department of Child Services ("DCS") did not present sufficient evidence the conditions under which Child was removed from their care would not be remedied and that the continuation of the parent-child relationship posed a threat to the child. We affirm.

## Facts and Procedural History

Child was born on July 28, 2011. On February 16, 2015, DCS received a report indicating Parents were using illegal substances and were not following the terms of a Protective Order Mother had against Father. The trial court ordered, at DCS's request, Parents to submit to drug screens. Mother tested positive for methamphetamine, amphetamine, and codeine. Father tested positive for methamphetamine, amphetamine, and THC. Parents admitted illegal drug use.

[3] On March 25, 2015, DCS removed Child from Parents' care and placed her with Maternal Grandmother, where she has remained throughout the proceedings. On March 26, DCS filed a petition alleging Child was a Child in Need of Services ("CHINS"). On April 8, Father admitted Child was a CHINS. The trial court held a hearing regarding Mother on May 20, but Mother did not appear. During that hearing, the trial court entered parental participation and dispositional decrees regarding Father. Then, on June 17, the trial court adjudicated Child a CHINS and entered parental participation and dispositional decrees regarding Mother.

[4] As part of the parental participation and dispositional decrees, the trial court required Father to refrain from using alcohol or illegal substances, submit to random drug screens, obtain and maintain stable housing, obtain and maintain a legal source of stable income, complete all terms of his probation, enroll in and successfully complete any programs recommended by the Family Case Manager ("FCM"), successfully complete substance abuse treatment, complete a domestic violence assessment and successfully complete all recommended treatment, and attend all scheduled visitation with Child. As part of the parental participation and dispositional decrees, the trial court required Mother to refrain from using alcohol or illegal substances, submit to random drug screens, obtain and maintain stable housing, obtain her GED, enroll in and successfully complete any programs recommended by the Family Case Manager ("FCM"), successfully complete substance abuse treatment, and attend all scheduled visitation with Child.

[5] Parents both initially participated in the required services, but each had periods of time where they could not be located by the FCM or a service provider. After over a year of intermittent compliance with services and visitation, DCS filed a petition to involuntarily terminate Parents' rights to Child. The trial court held fact finding hearings on the matter on January 17 and 31, 2017. On May 2, 2017, the trial court issued an order[1] involuntarily terminating Parents' rights to Child.

## Discussion and Decision

[6] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[7] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In*

---

[1] The trial court's order is very detailed and has aided our review of this complicated matter immensely.

*re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination.  *In re K.S.*, 750 N.E.2d at 837.  The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities.  *Id*. at 836.

To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[9] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[10] Parents challenge the court's conclusions the conditions under which Child was removed would not be remedied and the continuation of the parent-child relationship posed a risk to Child.[2]

[11] The trial court must judge parents' fitness to care for the child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).

---

[2] The trial court found the conditions under which Child was removed would not be remedied and the continuation of the parent-child relationship posed a threat to Child. DCS does not have to prove both. The statute is written in the disjunctive, and DCS must prove either by clear and convincing evidence. *See* Ind. Code § 31-35-2-4. Because the evidence supports the conclusion there was a reasonable probability conditions leading to Child's removal would not be remedied, we need not address whether the continuation of the parent-child relationship posed a threat to Child's well-being. *See In re L.S.,* 717 N.E.2d at 209 (because statute is written in the disjunctive, court needs to find only one requirement to terminate parental rights).

Evidence of parents' pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[12] When assessing parents' fitness to care for a child, the trial court should view the parents as of the time of the termination hearing and take into account the changes that have occurred during the proceedings. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. However, the trial court must also "evaluat[e] the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of [a] child." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.

[13] DCS removed Child from Parents' care because Parents tested positive for illegal substances and had a history of domestic violence. Throughout the CHINS proceedings, Parents were offered services ranging from home management and parenting skills to substance abuse rehabilitation. Father started many programs, but did not finish any of them. Mother successfully completed an inpatient substance abuse program, but did not engage in the recommended outpatient substance abuse program.

[14] Parents also had periods of time when the service providers could not reach them because Parents had not provided updated contact information. Parents also did not participate in family case meetings or visitation with Child during these periods. At one point Parents lived together in Father's van. Parents also

frequently relapsed into illegal drug use and refused multiple times to submit to random drug screens.

[15] Father did not engage in recommended domestic violence treatment. Mother attended an intake visit for group domestic violence treatment but the service provider was unable to complete the assessment "because Father kept knocking on the window of the room they were in." (App. Vol. II at 23.) Mother also snuck out of a domestic violence shelter to see Father. Ultimately, the court concluded:

> 187. DCS offered numerous services designated to address the parents' difficulties.
>
> 188. At the time of [sic] the fact finding hearing concluded on January 31, 2017, neither parent has shown a real investment in reunification. The circumstance of the parents had not improved since the child was removed. Neither parent was in a better position to care for the child.
>
> * * * * *
>
> 190. Although the parents love this child, neither has the current ability to meet the child's needs. It is not safe for the child to be in the care of Mother or Father at this time. Mother's history of instability and d [sic] substance use continues.
>
> 191. Father's history of instability and substance use continues. The domestic violence between the parents has not been addressed. All available services have been offered and nothing is significantly different in [sic] circumstances since the time of

removal[. T]o continue the parent-child relationship would be detrimental to the child. The child needs permanency now.

(*Id.* at 36.)

Parents argue they were mostly compliant with services and attempt to blame DCS for their failures to comply with the trial court's parental participation and dispositional decrees. The arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The evidence in the record supports the trial court's findings and conclusions.

# Conclusion

DCS provided sufficient evidence the conditions under which Child was removed from Parents' care would not be remedied. We therefore affirm the involuntary termination of Parents' parental rights to Child.

Affirmed.

Barnes, J., and Bradford, J., concur.